UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE ARBITRATION : | CIVIL ACTION NO: |
| : | 07-cv-6479 (RJH) |
| BETWEEN : | |
| : | |
| SUPREME OIL COMPANY, INC. : | |
| : | |
| Petitioner, : | |
| : | |
| and : | |
| : | |
| UFCW LOCAL 174 COMMERCIAL HEALTH : | |
| CARE FUND AND COMMERCIAL PENSION : | |
| FUND, : | |
| : | |
| Respondent. : | |

BRIEF IN RESPONSE AND IN OPPOSITION TO PETITIONER'S APPLICATION TO VACATE THE ARBITRATION AWARD

TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ................................................................................... ii

PROCEDURAL STATEMENT ............................................................................... 1

STATEMENT OF FACTS ....................................................................................... 1

LEGAL ARGUMENT

      I.     SUPREME OIL'S APPLICATION TO VACATE THE ARBITRATION AWARD BASED UPON 9 U.S.C.A. SECT. 10(a)(4) MUST FAIL BECAUSE THE ARBITRATOR'S AWARD WAS BASED ON THE ESSENCE OF THE COLLECTIVE BARGAINING AGREEMENT BETWEEN UFCW LOCAL 174 AND SUPREME OIL ...................................... 4

      II.    SUPREME OIL'S APPLICATION TO VACATE UNDER 9 U.S.C. § 10(a)(3) IS WITHOUT MERIT BECAUSE THE ARBITRATOR HAD DISCRETION TO REFUSE TO PERMIT THE ATTORNEY REPRESENTING SUPREME OIL TO SWITCH ROLES AND TESTIFY AS A WITNESS IN THE CASE AT BAR AND THE ATTORNEY REPRESENTING SUPREME OIL HAD AMPLE OPPORTUNITY TO SUBPOENA OTHER WITNESSES BUT FAILED TO DO SO ........................... 7

      III.   PURSUANT TO 29 U.S.C. 1451(e), THE RESPONDENTS HEREIN SHOULD BE AWARDED REASONABLE ATTORNEY'S FEES AND COSTS IN CONNECTION WITH THE DEFENSE OF THIS ACTION.……………………………….8

CONCLUSION……………………………………………………………….9

## TABLE OF AUTHORITIES

CASES                                                                                                      PAGE

Bell Aerospace Co. Div. of Textron, Inc. v. Local 516,
    500 F.2d 921, 923 (2d Cir. 1974)..................................................................8

Hoteles Condado Beach v. Union De Tronquistas Local 901,
    763 F.2d 34, 39 (1st Cir. 1974)....................................................................7

Pompano-Windy City Partners v. Bear Stearns & Co.,
    794 F. Supp. 1265, 1277 (S.D.N.Y. 1992)..................................................7

United Paperworkers Int'l Union v. Misco, Inc.,
    484 U.S. 29, 36, 108 S. Ct. 364, 370, 98 L. Ed. 2d 286 (1987)...................4

United Steel Workers v. Enterprise Wheel & Car Corp.,
    363 U.S. 593, 597-98, 80 S. Ct. 1358, 1361, 4 L. Ed. 2d 1424 (1960).........4

United Steelworkers of America v. Warrior & Gulf Navigation Co.,
    363 U.S. 574, 582-83, 80 S. Ct. 1347, 1352-53, 4 L. Ed. 2d 1409 (1960) ...4


STATUTES

9 U.S.C. § 9, 10..............................................................................................1

9 U.S.C.A. § 10(a)(3).....................................................................................7

9 U.S.C.A. § 10(a)(4).....................................................................................4

29 U.S.C. 1451(e) ..........................................................................................8

## PROCEDURAL STATEMENT

United Food & Commercial Workers, AFL-CIO Local 174 Commercial Health Care Fund and the Local 174 Commercial Pension Fund (collectively referred to as the "Funds") and Supreme Oil Company, Inc. ("Supreme Oil") renewed their Collective Bargaining Agreement ("CBA") in 2000 and entered into two (2) Memorandum of Agreements, the first dated on or about October 1, 2003 ("Final Offer) and the other dated December 6, 2006 ("Memorandum"). See Final Offer and Memorandum, copies of which are attached hereto as **Exhibit B**, and made a part hereof. Because Supreme Oil refused to pay the Funds billings for its employee health care and pension contributions, the matter was submitted to arbitration, as they had agreed to do in the CBA. Arbitrator William F. Clarke ("Arbitrator Clarke") issued an Award on June 13, 2007. *See*, Arbitration Award, a copy of which is attached hereto as **Exhibit A**, and made a part hereof. Supreme Oil now seeks to improperly vacate the arbitration award, pursuant to 9 U.S.C. § 9-10. However; where, as here, the Arbitration Award is based on the essence of the contractual agreement between parties, it is respectfully submitted that this Court lacks the authority to vacate the Arbitration Award and substitute its own judgment for that of the Arbitrator.

## STATEMENT OF FACTS

1. On four (4) separate arbitration dates, October 26, 2006; March 21, 2007; April 26, 2007 and May 16, 2007, the parties in the within action appeared before Arbitrator Clarke. Larry Cole, Esq. ("Mr. Cole") represented the Petitioner, Supreme Oil, and Andrew John Calcagno, Esq. ("Mr. Calcagno") represented the Respondents, the Funds.

2. At no time during any of the first three (3) arbitration hearings did Mr. Cole ever advise Arbitrator Clarke or Mr. Calcagno that he intended to testify as a witness on behalf of the Petitioner.

3. On the last scheduled hearing date of May 16, 2007, the proceedings began at 10:00 a.m. with the Funds' case in chief. Mr. Calcagno called two (2) witnesses and introduced numerous documents into evidence.

4. At no time from 10:00 a.m. until 2:00 p.m. did Mr. Cole ever mention that he intended to call himself as a witness. Rather, he and his associate, Kenneth E. Bellani, Esq. ("Mr. Bellani"), sat across the table and Mr. Cole cross-examined the Funds' witnesses. At no time during the proceeding on May 16, 2007 between 10:00 a.m. and 2:00 p.m. did Mr. Bellani speak, nor was Mr. Bellani present at the October 2006, March 2007, or April 2007 arbitration dates. Mr. Bellani never stated that he would be participating in the proceedings and all person(s) present saw him as an observer who simply attended the arbitration as an associate of Mr. Cole's firm.

5. The Funds subpoenaed two (2) witnesses, namely, Thomas Cunningham ("Mr. Cunningham"), Business Agent for UFCW Local 1245 (the "Union"); Maria Vegas ("Ms. Vegas"), the Funds' Collection Manager. The Funds called Mr. Cunningham as a witness because he was part of the negotiating team on behalf of the Union during the relevant contract negotiations. Mr. Cunningham also testified that John Troccoli, Secretary/Treasurer of the Union, and Vincent DeVito, the President of the Union, and Michael Lefler, one of the Principals of Supreme Oil, were all present during the relevant labor contract negotiations. Additionally, the Funds called Mr. Jim Smith, the Controller and Vice President of Supreme Oil, as an adverse witness in the Funds' case in chief.

6. At no time during Supreme Oil's case in chief did it subpoena and/or call any of the aforementioned witnesses to testify at any of the arbitration hearings. Rather, Mr. Cole, after the arbitration was coming to a close, announced for the first time, without prior notice to Mr. Calcagno or Arbitrator Clarke, that he intended to call himself as a witness as to what transpired during labor negotiations. Mr. Calcagno raised several objections based upon, among other things, unfair surprise; prejudice; and as the attorney for Supreme Oil, Mr. Cole's testimony would be nothing more than self-serving statements without corroboration or support; and in effect allowing Mr. Cole's testimony would deny Mr. Calcagno's effective right to cross-examination.

7. It is well-established under New York Law that an attorney who wishes to call himself as a witness must recuse himself from the case. Mr. Cole had every opportunity during the seven (7) month period from October 2006 through May 2007 to call several witnesses, including his client, Michael Lefler; the president of the Union, Vincent DeVito; and the secretary/treasurer of the Union, John Troccoli to establish what occurred during labor negotiations. Moreover, Mr. Cole had the opportunity and, in fact, exercised his opportunity at the April 2007 and May 2007 hearings to cross-examine Mr. Cunningham.

8. It is interesting to note that Mr. Cole, in fact, other than proposing to call himself, failed to call any witnesses to support his case, even though Mr. Michael Lefler, a principal of Supreme Oil, was present during the relevant labor contract negotiations. Additionally, Mr. Jim Smith, the Controller and Vice President of Supreme Oil, was present during all of the arbitration proceedings from October 2006 through May 2007 and Mr. Cole failed to call hi as a witness in the defense of the matter.

**LEGAL ARGUMENT**

I. SUPREME OIL'S APPLICATION TO VACATE THE ARBITRATION AWARD BASED UPON 9 U.S.C.A. SECT. 10(a)(4) MUST FAIL BECAUSE THE ARBITRATOR'S AWARD WAS BASED ON THE ESSENCE OF THE COLLECTIVE BARGAINING AGREEMENT BETWEEN UFCW LOCAL 174 AND SUPREME OIL

Because arbitration is primarily a matter of contract, an arbitrator's award must "draw its essence from the collective bargaining agreement." United Steel Workers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597-598, 80 S. Ct. 1358, 1361, 4 L. Ed. 2d 1424 (1960); United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 108 S. Ct. 364, 370, 98 L. Ed. 2d 286 (1987). While a court may review whether an arbitrator has exceeded his scope of authority, it must resolve all doubts in favor of the arbitrator's authority. See United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83, 80 S. Ct. 1347, 1352-53, 4 L. Ed. 2d 1409 (1960). In Misco, the Court observed, "As long as the arbitrator is … acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." 484 U.S. at 38, 108 S. Ct. at 371, 98 L. Ed. 2d 286. "[T]he question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." Enterprise Wheel, 363 U.S. at 597, 80 S. Ct. at 1361-62. It is well settled that "courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rest on error of fact or on misinterpretation of the contract." See Misco, 484 U.S at 36, 108 S. Ct. at 370 (citing Enterprise Wheel, 363 U.S. at 596, 80 S. Ct. at 1360, 4 L. Ed. 2d 1424).

In the case at bar, both parties agreed to arbitrate disputes by the express written terms of the Final Offer and Memorandum, which were entered into when the prior Collective Bargaining Agreement expired. See Final Offer and Memorandum, copies of which are attached hereto as **Exhibit B**. Both parties understood that the results of an arbitration hearing were binding and that both parties would abide by the Arbitration Award.

In this case, Supreme oil disputed the meaning of the language in the Final Offer regarding the amount of the contributions to be paid by Supreme Oil to the Funds. The Final Offer states:

>   ARTICLE 13 - Welfare Fund
>   ...
>
>   (a) UFCW Local 174 Commercial Health Care.
>
>   Family Plan
>   Effective October 1, 2003     $458.00 per month
>   Effective October 1, 2004     $508.00 per month*
>   Effective October 1, 2005     $558.00 per month*
>
>   *Rates may be increased by up to $25.00 per month in accordance
>   with a call-up to all contributing Employers.
>
>
>   Single Coverage
>   Effective October 1, 2003     $271.00 per month
>   Effective October 1, 2004     $295.00 per month*
>   Effective October 1, 2005     $334.00 per month*
>
>   *Rates may be increased by up to $25.00 per month in accordance
>   with a call-up to all contributing Employers.

Supreme Oil's brief repeatedly addresses the merits of this case. Trying to question the Arbitrator's interpretation of the Final Offer and his rationale is not properly within the realm of review for this Court. The Arbitrator's interpretation of the contract is what the parties bargained for and, respectfully, cannot be changed by the Court. Supreme Oil's dissatisfaction with the

outcome of the arbitration is not grounds for vacating the award, and Supreme Oil fails to state any other ground to vacate the Award Supreme Oil's brief. As stated very clearly in the cases cited above, Arbitrator Clarke must have leeway to make determinations of law and of fact.

The Funds maintained, and the Arbitrator agreed, that the most logical reading of the Final Offer was that the Funds were entitled to a $50 increase of the previous year's contribution rate, along with a $25 increase due to a call-up. (Please note that in the Arbitration Award, Arbitrator Clarke refers to the Final Offer as "MOA") Therefore, the rate for 2004 was $508 + $25 = $533. In 2005, the contribution rate was increased $50 from the prior year, plus another call-up in the amount of $25. Therefore, the rate for 2005 was $533 + $50 + $25 = $608. The Funds submitted proof of the 2004 and 2005 call-ups at the Hearing. See Minutes regarding the 2004 and 2005 call-up, copies of which are attached hereto as **Exhibits C and D, respectively**. In fact, Arbitrator Clarke specifically states, in great detail, his reasons regarding the calculations, and adds that Mr. Troccoli, who was one of the labor contract negotiators and a Board Member representing the Union at the Trust Fund Board Meetings, voted to approve the call-up increase. See Arbitration Award at pp. 5-8, a copy of which is attached hereto as **Exhibit A**. Arbitrator Clarke also pointed out that Supreme Oil failed to call Mr. Troccoli or anyone else present at the negotiations, including his own client, Michael Lefler, to refute the Funds' interpretation of the Final Offer. See Arbitration Award at pp. 7, a copy of which is attached hereto as **Exhibit A**.

To further support Supreme Oil's complete disregard of the contribution rates contained in the Final Offer, Supreme Oil continued to pay $503 in 2004 and 2005, despite the higher rates that are in the Final Offer. Although Mr. Cole conceded that the rates increased with each year

- 6 -

(only disagreeing with the way in which the call-up was to be applied), Supreme Oil failed to pay any of the contractual increases as stated in the Final Offer.

II. SUPREME OIL'S APPLICATION TO VACATE UNDER 9 U.S.C. § 10(a)(3) IS WITHOUT MERIT BECAUSE THE ARBITRATOR HAD FULL AND SOLE DISCRETION TO DENY SUPREME OIL'S ATTORNEY'S REQUEST TO SWITCH ROLES AND TESTIFY AS A WITNESS IN THE CASE AT BAR. SUPREME OIL'S ATTORNEY HAD AMPLE OPPORTUNITY TO SUBPOENA OTHER WITNESSES BUT FAILED TO DO SO AT HIS CLIENT'S PERIL

Hoteles v. Union de Tronquistas Local 1901 holds, in part, that, "An arbitrator enjoys wide latitude in conducting an arbitration hearing. Arbitration proceedings are not constrained by formal rules of procedure or evidence; the arbitrator's role is to resolve disputes, based on his consideration of all relevant evidence, once the parties to the dispute have had a full opportunity to present their case." Hoteles Condado Beach, La Concha and Convention Center v. Union de Tronquistas Local 901, 763 F.2d 34, 38 (1st Cir. 1985). In its brief, Petitioner neglected to include the following portion of the Court's holding in Hoteles, *supra*, which states: "Arbitration is, however, a private proceeding which is generally closed to the public. *Id.* at 202. The arbitrator has discretion to exclude or sequester witnesses during the arbitration hearing, especially when he believes sequestration to be necessary to "discourag[e] and expos[e] fabrication, inaccuracy, and collusion" among the witnesses."

An arbitrator's refusal to hear evidence does not automatically require the vacatur of an award. "It is well settled that arbitrators are afforded broad discretion to determine whether to hear evidence." Pompano-Windy City Partners v. Bear Stearns & Co., 794 F. Supp. 1265, 1277 (S.D.N.Y. 1992) (explaining that "the arbitrator is the judge of the admissibility and relevancy of evidence submitted in an arbitration proceeding") (citations omitted). Moreover, "in handling evidence an arbitrator need not follow all the niceties observed by the federal courts. He need

- 7 -

only grant the parties a fundamentally fair hearing." Bell Aerospace Co. Div. of Textron, Inc. v. Local 516, 500 F.2d 921, 923 (2d Cir. 1974).

In this case, Arbitrator Clarke did not prejudice Supreme Oil or deny Supreme Oil a fundamentally fair hearing in declining to hear Mr. Cole testify as a witness, when he had been acting as counsel for the Defendant up until that point in the hearing. Mr. Cole had ample opportunity to find another lawyer to handle this matter from start to finish. Moreover, at no time during the three (3) prior arbitration hearings did Mr. Cole notify Arbitrator Clarke or Mr. Calcagno that he intended to call himself as a witness. Furthermore, Mr. Cole had ample opportunity to call or subpoena any additional witnesses, including his own client, yet failed to do so. In fact, Arbitrator Clarke makes reference to that point in the Arbitration Award. See Arbitration Award at pp. 7, a copy of which is attached hereto as **Exhibit A**. When Mr. Cole realized at the fourth (4th) and final hearing near the closing of the arbitration proceedings that he had not subpoenaed any witnesses, he decided to call himself as a witness, knowing full well that he had not recused himself as the attorney for Supreme Oil and would prejudice the Funds' case by way of, among other things, unfair surprise. Based upon the caselaw cited above, Arbitrator Clarke was well within his discretion to decline to hear testimony from opposing counsel as a "witness." Based upon the foregoing, Arbitrator Clarke properly ruled that Mr. Cole was prohibited from testifying.

III.   PURSUANT TO 29 U.S.C. 1451(e), THE RESPONDENTS HEREIN SHOULD BE AWARDED REASONABLE ATTORNEY'S FEES AND COSTS IN CONNECTION WITH THE DEFENSE OF THIS ACTION

29 U.S.C. 1451(e) states: "In any action under this section [Civil actions], the court may award all or a portion of the costs and expenses incurred in connection with such action, including reasonable attorney's fees, to the prevailing party." In the case at hand, the Petitioner

should pay to the Respondents, among other things, attorney's fees in connection with the Respondents' defense of the within action, if the Respondents prevail because of Petitioner's continuous, purposeful delay in paying contributions.

The Petitioner deliberately failed to pay, and are continuing to fail to pay, contributions that are due and owing to the Respondents. Arbitrator Clarke stated in the Arbitration Award, "…It is clear, however, that this employer by refusing to pay contractual rates, regardless of call-up, willfully withheld monies owed to this Fund…" See Arbitration Award at pp. 18, a copy of which is attached hereto as **Exhibit A**. Although the Petitioner claims Arbitrator Clarke miscalculated the monies due and owing to the Respondents in connection with the call-up, the Petitioner has not attempted to pay the contractual rates for the second and third years of the Final Offer. Petitioner is further attempting to delay payment by commencing the within action.

Based upon the foregoing, if the Respondents prevail, the Petitioner should be ordered to pay reasonable attorney's fees at the rate of $375 per hour plus costs to the Respondents in connection with the Respondents' defense of the within action.

## CONCLUSION

Based on the foregoing, it is respectfully requested that this Honorable Court deny Petitioner's Application to Vacate the Arbitration Award in its entirety and grant Respondents' reasonable attorney's fees at the rate of $375 per hour plus costs for defending this action.

                Respectfully submitted,

                CALCAGNO & ASSOCIATES
                ATTORNEYS AT LAW, LLC

Dated: August 21, 2007                ANDREW JOHN CALCAGNO