UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE ARBITRATION | Case No. 07-cv-6479 (RJH)(JCF) |
| BETWEEN | ECF CASE |
| SUPREME OIL COMPANY, INC. | |
| Petitioner, | |
| and | |
| UFCW LOCAL 174 COMMERCIAL HEALTH CARE FUND AND COMMERCIAL PENSION FUND, | |
| Respondents. | |
| RICHARD ABONDOLO, as Chairman of the Board of Trustees of UFCW LOCAL 174 COMMERCIAL HEALTH CARE FUND and RICHARD ABONDOLO, as Chairman of the Board of Trustees of UFCW LOCAL 174 COMMERCIAL PENSION FUND, | Case No. 07-cv-6537 (RJH)(JCF) ECF CASE |
| Petitioners, | |
| -against- | |
| SUPREME OIL COMPANY, INCORPORATED a/k/a SUPREME OIL COMPANY, INC., | |
| Respondent. | |

BRIEF IN OPPOSITION TO SUPREME OIL COMPANY, INC.'S MOTION TO VACATE THE ARBITRATION AWARD AND IN SUPPORT OF RICHARD ABONDOLO, as Chairman of the Board of Trustees of UFCW LOCAL 174 COMMERCIAL HEALTH CARE FUND and RICHARD ABONDOLO, as Chairman of the Board of Trustees of UFCW LOCAL 174 COMMERCIAL PENSION FUND'S CROSS-MOTION TO ENFORCE THE ARBITRATION AWARD, FOR ARBITRATOR'S FEES, AND FOR ATTORNEYS' FEES

**PROCEDURAL STATEMENT**

United Food & Commercial Workers, AFL-CIO Local 174 Commercial Health Care Fund and the Local 174 Commercial Pension Fund, RICHARD ABONDOLO, as Chairman of the Board of Trustees of UFCW LOCAL 174 COMMERCIAL HEALTH CARE FUND and RICHARD ABONDOLO, as Chairman of the Board of Trustees of UFCW LOCAL 174 COMMERCIAL PENSION FUND (collectively hereinafter referred to as the "Funds") and Supreme Oil Company, Inc. and Supreme Oil Company, Incorporated a/k/a Supreme Oil Company, Inc. (collectively hereinafter referred to as "Supreme Oil") renewed their Collective Bargaining Agreement ("CBA") in 2000 and entered into two (2) Memorandum of Agreements, the first dated on or about October 1, 2003 ("Final Offer) and the other dated December 6, 2006 ("Memorandum").  See Final Offer and Memorandum, copies of which are attached hereto as **Exhibit B**, and made a part hereof.  Because Supreme Oil refused to pay the Funds billings for its employee health care and pension contributions, the matter was submitted to arbitration, as they had agreed to do in the CBA.  Arbitrator William F. Clarke ("Arbitrator Clarke") issued an Award on June 13, 2007.  *See*, Arbitration Award, a copy of which is attached hereto as **Exhibit A**, and made a part hereof.  The Funds filed an action in Federal Court to enforce the Arbitration Award, and Supreme Oil contemporaneously filed an action to vacate the Award, pursuant to 9 U.S.C. § 9-10.  However; where, as here, the Arbitration Award is based on the essence of the contractual agreement between parties, it is respectfully submitted that this Court lacks the authority to vacate the Arbitration Award and substitute its own judgment for that of the Arbitrator.

**STATEMENT OF FACTS**

See the Affirmation of Andrew John Calcagno, which is submitted herewith and incorporated herein by reference.

**LEGAL ARGUMENT**

I. **SUPREME OIL'S APPLICATION TO VACATE THE ARBITRATION AWARD BASED UPON 9 U.S.C.A. SECT. 10(a)(4) MUST FAIL BECAUSE THE ARBITRATOR'S AWARD WAS BASED ON THE ESSENCE OF THE COLLECTIVE BARGAINING AGREEMENT BETWEEN UFCW LOCAL 174 AND SUPREME OIL**

Because arbitration is primarily a matter of contract, an arbitrator's award must "draw its essence from the collective bargaining agreement." United Steel Workers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597-598, 80 S. Ct. 1358, 1361, 4 L. Ed. 2d 1424 (1960); United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 108 S. Ct. 364, 370, 98 L. Ed. 2d 286 (1987). While a court may review whether an arbitrator has exceeded his scope of authority, it must resolve all doubts in favor of the arbitrator's authority. See United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83, 80 S. Ct. 1347, 1352-53, 4 L. Ed. 2d 1409 (1960). In Misco, the Court observed, "[a]s long as the arbitrator is … acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." 484 U.S. at 38, 108 S. Ct. at 371, 98 L. Ed. 2d 286. "[T]he question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." Enterprise Wheel, 363 U.S. at 597, 80 S. Ct. at 1361-62. It is well settled that "courts are not authorized to reconsider the merits of an award

even though the parties may allege that the award rest on error of fact or on misinterpretation of the contract." See Misco, 484 U.S at 36, 108 S. Ct. at 370 (citing Enterprise Wheel, 363 U.S. at 596, 80 S. Ct. at 1360, 4 L. Ed. 2d 1424).

In the case at bar, both parties agreed to arbitrate disputes by the express written terms of the Final Offer and Memorandum, which were entered into when the prior Collective Bargaining Agreement expired. See Final Offer and Memorandum, copies of which are attached hereto as **Exhibit B**. Both parties understood that the results of an arbitration hearing were binding and that both parties would abide by the Arbitration Award.

In this case, Supreme Oil disputed the meaning of the language in the Final Offer regarding the amount of the contributions to be paid by Supreme Oil to the Funds. The Final Offer states:

> ARTICLE 13 - Welfare Fund
> …
>
> (a) UFCW Local 174 Commercial Health Care.
>
> Family Plan
> Effective October 1, 2003    $458.00 per month
> Effective October 1, 2004    $508.00 per month*
> Effective October 1, 2005    $558.00 per month*
>
> *Rates may be increased by up to $25.00 per month in accordance with a call-up to all contributing Employers.
>
>
> Single Coverage
> Effective October 1, 2003    $271.00 per month
> Effective October 1, 2004    $295.00 per month*
> Effective October 1, 2005    $334.00 per month*
>
> *Rates may be increased by up to $25.00 per month in accordance with a call-up to all contributing Employers.

Supreme Oil's brief repeatedly addresses the merits of this case. Trying to question the Arbitrator's interpretation of the Final Offer and his rationale; however, is not properly within the realm of review for this Court. The Arbitrator's interpretation of the contract is what the parties bargained for and, respectfully, cannot be changed by the Court. See Misco, supra. Supreme Oil's dissatisfaction with the outcome of the arbitration is not grounds for vacating the award, and Supreme Oil fails to state any other ground to vacate the Award in Supreme Oil's brief. As stated very clearly in the cases cited above, Arbitrator Clarke must have leeway to make determinations of law and of fact.

The Funds maintained, and the Arbitrator agreed, that the most logical reading of the Final Offer was that the Funds were entitled to a $50 increase of the previous year's contribution rate, along with a $25 increase due to a call-up. (Please note that in the Arbitration Award, Arbitrator Clarke refers to the Final Offer as "MOA") Therefore, the rate for 2004 was $508 + $25 = $533. In 2005, the contribution rate was increased $50 from the prior year, plus another call-up in the amount of $25. Therefore, the rate for 2005 was $533 + $50 + $25 = $608. The Funds submitted proof of the 2004 and 2005 call-ups at the Hearing. See Minutes regarding the 2004 and 2005 call-up, copies of which are attached hereto as **Exhibits C and D, respectively**. In fact, Arbitrator Clarke specifically states, in great detail, his reasons regarding the calculations, and adds that Mr. Troccoli, who was one of the labor contract negotiators and a Board Member representing the Union at the Trust Fund Board Meetings, voted to approve the call-up increase and found that the call-up increases were in addition to the $50 increases in each year of the contract. See Arbitration Award at pp. 5-8, a copy of which is attached hereto as **Exhibit A**. Arbitrator Clarke also pointed out that Supreme Oil failed to call Mr. Troccoli or anyone else present at the negotiations, including his own client, Michael Lefler, to refute the

Funds' interpretation of the Final Offer. See Arbitration Award at pp. 7, a copy of which is attached hereto as **Exhibit A**.

To further support Supreme Oil's complete disregard of the contribution rates contained in the Final Offer, Supreme Oil continued to pay $503 in 2004 and 2005, despite the higher rates that are in the Final Offer. Although Mr. Cole conceded that the rates increased with each year (only disagreeing with the way in which the call-up was to be applied), Supreme Oil failed, to date, to pay any of the contractual increases as stated in the Final Offer. See **Exhibit A**.

II. **SUPREME OIL'S APPLICATION TO VACATE UNDER 9 U.S.C. § 10(a)(3) IS WITHOUT MERIT BECAUSE THE ARBITRATOR HAD FULL AND SOLE DISCRETION TO DENY SUPREME OIL'S ATTORNEY'S REQUEST TO SWITCH ROLES AND TESTIFY AS A WITNESS IN THE CASE AT BAR. SUPREME OIL'S ATTORNEY HAD AMPLE OPPORTUNITY TO SUBPOENA OTHER WITNESSES BUT FAILED TO DO SO AT HIS CLIENT'S PERIL**

Hoteles v. Union de Tronquistas Local 1901 holds, in part, that, "An arbitrator enjoys wide latitude in conducting an arbitration hearing. Arbitration proceedings are not constrained by formal rules of procedure or evidence; the arbitrator's role is to resolve disputes, based on his consideration of all relevant evidence, once the parties to the dispute have had a full opportunity to present their case." Hoteles Condado Beach, La Concha and Convention Center v. Union de Tronquistas Local 901, 763 F.2d 34, 38 (1st Cir. 1985). In its brief; however, Supreme Oil neglected to include the following portion of the Court's holding in Hoteles, *supra*, which states: "Arbitration is, however, a private proceeding which is generally closed to the public. *Id.* at 202. The arbitrator has discretion to exclude or sequester witnesses during the arbitration hearing, especially when he believes sequestration to be necessary to "discourag[e] and expos[e] fabrication, inaccuracy, and collusion" among the witnesses."

An arbitrator's refusal to hear evidence does not require the vacatur of an award. "It is well settled that arbitrators are afforded broad discretion to determine whether to hear evidence." Pompano-Windy City Partners v. Bear Stearns & Co., 794 F. Supp. 1265, 1277 (S.D.N.Y. 1992) (explaining that "the arbitrator is the judge of the admissibility and relevancy of evidence submitted in an arbitration proceeding") (citations omitted). Moreover, "in handling evidence an arbitrator need not follow all the niceties observed by the federal courts. He need only grant the parties a fundamentally fair hearing." Bell Aerospace Co. Div. of Textron, Inc. v. Local 516, 500 F.2d 921, 923 (2d Cir. 1974). Furthermore, "'[e]very failure of an arbitrator to receive relevant evidence does not constitute misconduct requiring vacatur of an arbitrator's award.'" Interdigital Communs. Corp. v. Samsung Elecs. Co., 2007 U.S. Dist. LEXIS 91135 (D.N.Y. 2007), Lessin v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 375 U.S. App. D.C. 317 (D.C. Cir. 2007).

In this case, Arbitrator Clarke did not prejudice Supreme Oil or deny Supreme Oil a fundamentally fair hearing in declining to hear Mr. Cole testify as a witness, when he had been acting as counsel for the Defendant up until that point in the hearing. Supreme Oil had ample opportunity to find another lawyer to handle this matter from start to finish. Moreover, at no time during the three (3) prior arbitration hearings did Mr. Cole notify Arbitrator Clarke or Mr. Calcagno that he intended to call himself as a witness. Furthermore, Mr. Cole had ample opportunity to call or subpoena any additional witnesses, including his own client, yet failed to do so. In fact, Arbitrator Clarke makes reference to that point in the Arbitration Award. See Arbitration Award at pp. 7, a copy of which is attached hereto as **Exhibit A**. When Mr. Cole realized at the fourth (4th) and final hearing near the closing of the arbitration proceedings that he had not subpoenaed any witnesses, he decided to call himself as a witness, knowing full well that he had not recused himself as the attorney for Supreme Oil and would prejudice the Funds' case

by way of, among other things, unfair surprise.  Based upon the caselaw cited above, Arbitrator Clarke was well within his discretion to decline to hear testimony from opposing counsel as a "witness."  Based upon the foregoing, Arbitrator Clarke properly ruled that Mr. Cole was prohibited from testifying.

**III.   PURSUANT TO 29 U.S.C. 1451(e), COUNSEL FOR THE FUNDS SHOULD BE AWARDED REASONABLE ATTORNEY'S FEES AND COSTS IN CONNECTION WITH THE DEFENSE OF THIS ACTION**

29 U.S.C. 1451(e) states: "In any action under this section [Civil actions], the court may award all or a portion of the costs and expenses incurred in connection with such action, including reasonable attorney's fees, to the prevailing party."  In the case at hand, bearing Case Number 07-CV-6479, Supreme Oil as the Petitioner, should pay to the Funds, as the Respondents, among other things, reasonable attorney's fees in connection with the Funds' defense of the within action, if the Funds prevail, especially because of Supreme Oil's continuous, purposeful delay in paying contributions on behalf of its employees to the Funds.

Supreme Oil has deliberately failed to pay contributions that are clearly due and owing to the Funds, despite its knowledge that it owes contributions to the Funds in order to maintain its employees' health benefits.  As evidence of Supreme Oil's willful failure to pay the contributions due to the Funds, Arbitrator Clarke stated in the Arbitration Award, "…It is clear, however, that this employer by refusing to pay contractual rates, regardless of call-up, willfully withheld monies owed to this Fund…"  See Arbitration Award at pp. 18, a copy of which is attached hereto as **Exhibit A**.  Although Supreme Oil claims Arbitrator Clarke miscalculated the monies due and owing to the Funds in connection with the call-up, Supreme Oil has not paid the contractual rates for the second and third years of the Final Offer, even though it admitted at the

Hearing that it owed the money. Supreme Oil is further attempting to delay payment to the Funds by commencing the action bearing Case Number 07-CV-6479.

Based upon the foregoing, if the Funds prevail in the case bearing Case Number 07-CV-6479, Supreme Oil should be ordered to pay reasonable attorney's fees at the rate of $375 per hour plus costs to Andrew John Calcagno, Esq., counsel for the Funds, in connection with the Funds' defense of the action bearing Case Number 07-CV-6479. See Invoice of counsel for the Funds dated February 11, 2008, a copy of which is attached hereto as **Exhibit F**, and made a part hereof. See also, the Funds' Statement of Amount Due, a copy of which is attached hereto as **Exhibit G**, and made a part hereof.

### IV.    THE COURT MUST CONFIRM THE ARBITRATION AWARD, AWARDING UNPAID CONTRIBUTIONS, INTEREST, LIQUIDATED DAMAGES, ATTORNEYS' FEES, AND ARBITRATOR'S FEES

The district court's review of an arbitration award is governed by the Federal Arbitration Act (the "FAA"). *See*, ITXC Corporation v. Teleconomico USA, Inc., 2002 U.S. Dist LEXIS 18457 (2002). Under the FAA, a court must confirm an award upon proper application unless the award is vacated, modified or corrected. *See*, 9 U.S.C.A. §9. The Supreme Court has held that "courts play only a limited role when asked to review the decision of an arbitrator" and may not "reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 36 (1987). Under this limited review, an arbitral award is legitimate if the arbitrator acts within the scope of his authority and it "draws its essence from the collective bargaining agreement." Enterprise Wheel & Car Corp., 363 U.S. 593, 598, 363 U.S. 593, 597 (1960). The reasoning behind the federal courts' great deference to an arbitrator's determination is to encourage and facilitate the role played by arbitration in resolving disputes under collective

bargaining agreements and the recognition that "the federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards." *See*, Enterprise Wheel, 363 U.S. at 596.

In the case at bar bearing Case Number 07-CV-6537 (the Funds' action to Confirm the Arbitration Award), federal law as well as federal policy requires the Court to confirm the Arbitration Award and grant the Funds' application to confirm the Award. Supreme Oil simply refuses to abide by the arbitrator's decision. In this matter, the arbitrator clearly acted within the scope of his authority and the award was drawn from the essence of the CBA. Accordingly, the Funds' Petition to Confirm the Arbitration Award should be enforced and the arbitrator should also be granted his fees in the amount of $4,000.00. See Arbitrator Clarke's bill in connection with the Arbitration, a copy of which is attached hereto as **Exhibit E**, and made a part hereof.

### A.     The Arbitrator Acted Within The Scope Of His Authority

An arbitrator's scope of authority depends on the intention of the parties to the arbitration and is determined by the collective bargaining agreement or submission. Ottley v. Schwartzberg, 819 F.2d 373, 376 (2d Cir. 1987).

There is no question that the arbitrator acted within the scope of his authority and the parties submitted this matter to Arbitration. In the case at hand, the submission referred to in the paragraph above is the Final Offer and Memorandum. The Final Offer and Memorandum specifically outline Supreme Oil's responsibilities regarding its monthly contributions to the Funds. In fact, Article 13 requires the Employer to make monthly contributions for each eligible fulltime employee to the Funds. See Final Offer and Memorandum at Articles 13, a copy of which are attached hereto as **Exhibit B** and made a part hereof. The parties both agreed to

arbitrate the issues regarding Supreme Oil's failure to pay its contribution and agreed to be bound by the arbitrator's decision.

Based on the provisions of the Final Offer and Memorandum and the parties' agreement to enter into arbitration proceedings, the determination of Supreme Oil's monetary obligations to the Funds are arbitrable and within the realm of the arbitrator's authority. Since the matter at hand is clearly within the scope of the arbitrator's authority, the Funds' Petition to Confirm the Arbitration Award should be enforced as a matter of law.

### B. The Arbitration Award Was Drawn From The Essence of the Final Offer and Memorandum

The determination of whether the arbitration award drew its essence from the Final Offer and Memorandum requires the court to determine "whether the arbitrator interpreted an arguably ambiguous contractual provision in light of the intent of the parties, or merely administered his own brand of justice in contradiction of the clearly expressed language of the contract." Local 1199, Drug, Hospital and Health Care Employees Union v. Brooks Drug Co., 956 F.2d 25, 26 (2d Cir. 1992). In order to satisfy this standard, the arbitrator "need only explicate his reasoning under the contract 'in terms that offer even a barely colorable justification of the outcome reached." In re Marine Pollution Serv., 857 F.2d 91, 94 (2d Cir. 1988), *See also*, Wackenhut Corp v. Amalgamated Local 515, 126 F.3d 29, 31-32 (2d Cir. 1997). So long as the award does not directly contradict the express language of the collective bargaining agreement, the award is considered to have drawn its essence from the agreement." *See*, Local 813, Int'l Bortherhood of Teamsters v. Pioneer Carting Corp., 1997 U.S. Dist. LEXIS 1469, No. 96 Civ. 1044, 1997 WL 65909 (S.D.N.Y. Feb 13, 1997).

There is absolutely no ambiguity to the arbitrator's award as it relates to the provisions of the Final Offer and Memorandum.

After reviewing the evidence and testimony provided by both sides, the arbitrator found that Supreme Oil was delinquent in the payment of contributions to the Funds. See Arbitration Award, a copy of which is attached hereto as **Exhibit A**, and made a part of.  The Arbitration Award takes into consideration the amounts owed to the Funds, the accumulated interest, liquidated damages, and the attorneys' fees in connection with the Arbitration.  Indeed, the determination of the Arbitration Award reflects the very essence of the Final Offer and Memorandum and represents the very intent of the involved parties.  Since the arbitrator's findings and determinations are clearly justified, the Funds' Petition to Confirm the Arbitration Award must be confirmed and the Arbitrator should also be awarded his fees.

> **C.** **The Funds are Entitled to All Unpaid Contributions, Interest, Liquidated Damages, Attorneys' Fees, and Arbitrator's Fees Pursuant to 29 U.S.C. 1132(g)(2)**

As stated on page 19 of the Arbitration Award, Arbitrator Clarke found that Supreme Oil owes the Funds $294,665.00 in unpaid contributions. In addition, Arbitrator Clarke awarded liquidated damages at the rate of 20% and interest at the statutory rate of interest of 9%, pursuant to § 502(g)(2) of ERISA.  See Arbitration Award attached hereto as **Exhibit A**.  As set forth in the Funds' Petition to Confirm the Arbitration Award and stated in the Statement of Damages, liquidated damages shall be awarded in the amount of $58,933.00, interest in the amount of $26,519.85, and attorneys' fees up to June 7, 2007 in the amount of $19,425.00.

As prescribed by 502(g)(2) of ERISA:

> (2) In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, **the court shall award the plan**--
>   (A) the unpaid contributions,
>   (B) interest on the unpaid contributions,
>   (C) an amount equal to the greater of--
>     (i)  interest on the unpaid contributions, or

> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.

In addition to the foregoing, Arbitrator Clarke spent four (4) days at Hearing and wrote a twenty (20) page Decision. Arbitrator Clarke submitted the bill to counsel for the Funds to be paid by Supreme Oil. See Arbitrator's bill, a copy of which is attached hereto as **Exhibit E**, and made a part hereof. Pursuant to 502(g)(2)(E), the Court may grant any such other legal or equitable relief as the Court deems appropriate. In this case, it is respectfully submitted that the Arbitrator's fee in the amount of $4000 should be paid by Supreme Oil under subparagraph E aforementioned.

Based upon the foregoing, the Arbitration Award must be enforced, including unpaid contributions, liquidated damages, interest, attorneys' fees and arbitrator's fees. See Statement of Damages, a copy of which is attached hereto as **Exhibit G**, and made a part hereof.

## V.   THERE IS NO GENUINE ISSUE OF MATERIAL FACT

A Petition to confirm an Arbitration Award is akin to a motion for summary judgment. Summary judgment "shall be rendered forthwith if the pleadings, depositions . . .together with the affidavits . . .show that there is no genuine issue as to any material fact . . . and . . . the moving party is entitled to judgment as a matter of law." Fed R. Civ. P. 56(c). A "moving party is 'entitled to judgment as a matter of law' [if] the nonmoving party has failed to make a sufficient showing of an essential element of her case with respect to which she has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1985). In deciding a summary judgment

motion, a court need not resolve disputed issues of fact, but need only determine whether there are any genuine issues to be tried. Eastman Mach. Co., Inc. v. U.S. 841 F.2d 469, 473 (2d Cir. 1988). A disputed fact is material only if it might affect the outcome of the suit under the governing law. A genuine factual issue exists if there is sufficient evidence favoring the nonmovant such that a reasonable jury could return a verdict in her favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-249 (1986).

Additionally, actions to confirm arbitration awards are straightforward proceedings in which no other claims are to be adjudicated. *See*, Ottley v. Schwartzberg, 819 F.2d 373, 377 (2d Cir. 1987). "The confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." Florasynth, Inc. v. Picholz, 750 F.2d 171, 176 (2d Cir. 1984).

In an action to confirm an arbitration award such as in the matter at hand, there is no factual dispute for the courts to resolve. To the contrary, the fact finding process was established and a factual record was already concluded in the arbitration proceeding. With the Court's limited discretion concerning arbitration awards and an established factual record, the Funds' Petition to Confirm the Arbitration Award must be enforced as a matter of law.

VI.  **ATTORNEYS' FEES AND COSTS MUST BE GRANTED TO COUNSEL FOR THE FUNDS IN CONNECTION WITH THE CONFIRMATION OF THE ARBITRATION AWARD PURSUANT TO ERISA 502, 29 USC 1132(g)(2)(D)**

ERISA 502(g)(2)(D), 29 USC 1132(g)(2)(D), provides for the award of attorneys' fees in the event an Arbitration Award must be confirmed in federal court. Specifically, 29 USC 1132(g)(2)(D), states:

> In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, **the court shall award the plan**—

> "…(D)   reasonable attorney's fees and costs of the action, to be paid by the defendant…"

As set forth in the Affirmaton of Andrew John Calcagno, Esq. submitted herewith, the attorneys' fees incurred to arbitrate, confirm and defend the Arbitration Award were necessary and reasonable.  See page 19 of the Arbitration Award attached hereto as **Exhibit A**, wherein Arbitrator Clarke found the attorneys' fees to be "reasonable and in accordance with 502(g)(2)(D) of ERISA.

Based upon the foregoing, the Funds' request for attorney's fees and costs must be granted as a matter of law.

## CONCLUSION

Based on the foregoing, it is respectfully requested that this Honorable Court 1) deny Supreme Oil's Application to Vacate the Arbitration Award in its entirety; 2) grant the Funds' Cross-Motion in its entirety, confirming the Arbitration Award, granting attorneys' fees as stated herein in connection with enforcing the Arbitration Award and defending the action commenced by Supreme Oil plus costs; and 3) grant the Arbitrator's fees.

        Respectfully submitted,

        CALCAGNO & ASSOCIATES
        ATTORNEYS AT LAW, LLC


        By: /s Andrew John Calcagno
Dated: February 11, 2008        ANDREW JOHN CALCAGNO