UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE ARBITRATION BETWEEN | : CIVIL ACTION NO: 07-cv-6479(RJH)(JCF) |
| SUPREME OIL COMPANY, INC.<br><br>Petitioner, | |
| and | |
| UFCW LOCAL 174 COMMERCIAL HEALTH CARE FUND AND COMMERCIAL PENSION FUND<br><br>Respondent | |
| and | |
| RICHARD ABONDOLO, as Chairman of the Board of Trustees UFCW LOCAL 174 COMMERCIAL HEALTH CARE FUND and RICHARD ABONDOLO, as Chairman of the Board of Trustees of UFCW LOCAL 174 COMMERCIAL PENSION FUND,<br><br>Petitioner | : CIVIL ACTION NO: 07-cv-6537(RJH)(JCF) |
| and | |
| SUPREME OIL COMPANY, INCORPORATED, a/k/a SUPREME OIL COMPANY, INC.<br><br>Respondent | |

REPLY BRIEF ON BEHALF OF PETITIONER
SUPREME OIL COMPANY, INC.

STARR, GERN, DAVISON & RUBIN, P.C.
Attorneys for Supreme Oil Company, Inc.
105 Eisenhower Parkway
Roseland, New Jersey 07068
JL 2916

Kenneth E. Bellani, Esq.
on the Brief

TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES..................................................................................ii

I.      THE ARBITRATOR'S RULING DISREGARDED THE
        CLEAR AND UNEQUIVOCAL LANGUAGE AS WELL
        AS THE ESSENCE OF THE PARTIES' AGREEMENT.............................1

II.     THE ARBITRATOR'S REFUSAL TO HEAR THE
        TESTIMONY OF LARRY COLE, ESQ. CAUSED THE
        HEARING TO BE FUNDAMENTALLY UNFAIR TO
        SUPREME OIL..................................................................................4

III.    THE PLAN IS NOT ENTITLED TO ATTORNEYS' FEES
        IN CONNECTION WITH ITS DEFENSE OF THIS ACTION....................5

IV.     THE COURT, IN GRANTING SUPREME OIL'S PETITION,
        MUST DENY THE FUND'S CROSS-MOTION TO CONFIRM
        THE ARBITRATION AWARD................................................................5

V.      THE PLAN IS NOT ENTITLED TO ATTORNEYS' FEES
        AND COSTS RELATIVE TO ITS APPLICATION TO CONFIRM
        THE FAULTY AWARD..........................................................................6

# TABLE OF AUTHORITIES

**CASES**                                                                                             **PAGE**

Gas Aggregation Services, Inc. v. Howard Avista Energy, LLC.
    319 F.3d 1060, (C.A. 8 (Minn.) 2003).........................................................3

Houston Lighting & Power Co. v. Int'l Brother of Elec. Workers,
Local Union No. 66
    71 F.3d 179, 184 (5th Cir. 1995)................................................................4

Trans. Cas. Co. v. Trenwick Reinsurance Co.
    659 F. Supp. 1346, 1354 (S.D.N.Y. 1987) aff'd mem., 841 F.2d 1117
    (2nd Cir. 1988).............................................................................................5

**STATUTES**

29 U.S.C. §1132(g)(2)(D).............................................................................................6

29 U.S.C. §1451(e).......................................................................................................5

**TEXTS**

ERISA 502(g)(2)(D).....................................................................................................6

## I. THE ARBITRATOR'S RULING DISREGARDED THE CLEAR AND UNEQUIVOCAL LANGUAGE AS WELL AS THE ESSENCE OF THE PARTIES' AGREEMENT.

Contrary to the Fund's assertions that an arbitration award is virtually unassailable, it is beyond dispute that an Arbitrator is not at liberty to disregard the clear and unequivocal language of a collective bargaining agreement.[1] In the case at bar, the Arbitrator was called upon to apply the following language:

> Family Plan
> Effective October 1, 2003        $458.00 per month
> Effective October 1, 2004        $508.00 per month*
> Effective October 1, 2005        $558.00 per month*
>
> *Rates may be increased by up to $25.00 per month in accordance with a call-up to all contributing Employers.
>
> Single Coverage
> Effective October 1, 2003        $271.00 per month
> Effective October 1, 2004        $295.00 per month*
> Effective October 1, 2005        $334.00 per month*
>
> *Rates may be increased by up to $25.00 per month in accordance with a call-up to all contributing Employers.

This language is not subject to more than one interpretation. It can only mean the following:

> Family Plan
> Commencing on October 1, 2003, the contribution to be paid by Supreme Oil shall be $458.00 per month until September 30, 2004.
>
> Commencing on October 1, 2004, the contribution to be paid by Supreme Oil

---

[1] In the case at bar, the parties did not actually execute a formal collective bargaining agreement. Instead, they executed a document that was presented as a Final Offer during their contract negotiations that contained hand written revisions and which was executed as a Memorandum Agreement and which functioned as the agreement between the parties. For purposes of this brief, the parties' written agreement shall be referred to as the "MOA".

-1-

shall be $508.00 per month until September 30, 2005. However, if during this period of time there is a call-up to all contributing Employers, Supreme Oil may be required to pay up to $533.00 per month.

Commencing on October 1, 2005, the contribution to be paid by Supreme Oil shall be $558.00 per month until September 30, 2006. However, if during this period of time there is a call-up to all contributing Employers, Supreme Oil may be required to pay up to $583.00 per month.

Single Coverage
Commencing on October 1, 2003, the contribution to be paid by Supreme Oil shall be $271.00 per month until September 30, 2004.

Commencing on October 1, 2004, the contribution to be paid by Supreme Oil shall be $295.00 per month until September 30, 2005. However, if during this period of time there is a call-up to all contributing Employers, Supreme Oil may be required to pay up to $320.00 per month.

Commencing on October 1, 2005, the contribution to be paid by Supreme Oil shall be $334.00 per month until September 30, 2006. However, if during this period of time there is a call-up to all contributing Employers, Supreme Oil may be required to pay up to $359.00 per month.

This language clearly requires the rate to be re-set to pre-determined, agreed upon amounts on October 1, 2004 and October 1, 2005. And, each time the rate re-sets to the pre-determined amount, the clear language of the MOA allows for the pre-determined amount to be increased by an additional $25.00 per month if there was a call-up. The Arbitrator blatantly disregarded this language and, in effect, re-wrote the parties' agreement to provide as follows:

*Family Plan*
*Effective October 1, 2003*     $458.00 per month
*Effective October 1, 2004*     $508.00 + $25.00 call up increase = $533.00 per month
*Effective October 1, 2005*     $533.00 per month + a fixed $50.00 per month increase + $25.00 call up increase = $608.00 per month

   *Single Coverage*
   *Effective October 1, 2003*     *$271.00 per month*
   *Effective October 1, 2004*     *$295.00 + $25.00 call up increase =*
                    *$320.00 per month*
   *Effective October 1, 2005*     *$320.00 per month + a fixed $39.00 per*
                    *month increase + $25.00 call up increase =*
                    *$384 per month*

 The Arbitrator's revision of the MOA effectively deleted from this provision the language that says:

   **Family Coverage**
   **Effective October 1, 2005**     **$558.00 per month \***

   **\* Rates may be increased by up to $25.00 per month in accordance with a call-up to all contributing Employers.**

and

   **Single Coverage**
   **Effective October 1, 2005**     **$334.00 per month\***

   **\*Rates may be increased by up to $25.00 per month in accordance with a call-up to all contributing Employers.**

 Putting aside the fact that the Fund produced no evidence to establish the condition precedent that there be a call-up to all contributing Employers of employees that were members of Local 1245, the language of the MOA, as it pertains to how increases in Supreme Oil's monthly contributions are to be calculated year to year, is clear and unequivocal and allows for no other interpretation. This clear and unequivocal language in the MOA was simply ignored by the Arbitrator. Where "the language of the agreement is clear and unequivocal, an arbitrator is not free to change its meaning." Gas Aggregation Services, Inc. v. Howard Avista Energy, LLC, 319 F.3d 1060, (C.A. 8 (Minn.), 2003). Here, the Arbitrator strayed far from the clear and

unequivocal meaning of this language and dispensed his own brand of justice by establishing a method of determining how increases in Supreme Oil's monthly contributions are to be calculated year to year that is totally contrary to the language that both parties had previously bargained for. Such conduct has been determined to permit the court to render the Arbitrator's ruling unenforceable. See Houston Lighting & Power Co. v. Int'l Broth. Of Elec. Workers, Local Union No. 66, 71 F.3d 179, 184 (5th Cir. 1995).

This Court is undeniably vested with the authority to render the Arbitrator's arbitrary and capricious ruling unenforceable, and this Court must exercise this authority and vacate the ruling being appealed herein.

### II. THE ARBITRATOR'S REFUSAL TO HEAR THE TESTIMONY OF LARRY COLE ESQ. CAUSED THE HEARING TO BE FUNDAMENTALLY UNFAIR TO SUPREME OIL.

Despite the fact that it vehemently argues that it would have been improper for the Arbitrator to have permitted Larry Cole, Esq. to testify at the hearing as a witness to the collective bargaining process on the basis that he acted as counsel for Supreme Oil at the arbitration hearing, the Plan cites no statute, court rule or decision to support its argument, choosing instead to brandish such terms as "unfair surprise" and "prejudice" as a substitute for any real authority for this proposition. It was not as if this hearing was a jury trial in which untrained jurors could have become confused by the testimony of an advocate of one of the parties. An Arbitrator should be expected by the parties and by this Court to be able to maintain clearly the distinction between what is factual testimony of the attorney as witness and what is advocacy concerning the testimony of the other witnesses who testified at the hearing. Counsel for the Plan would have been able to cross-examine Mr. Cole and to call witnesses in rebuttal to

his testimony. The plain fact is that Mr. Cole was the lead negotiator for Supreme Oil in connection with the collective bargaining agreement in question and himself actually signed the agreement on behalf of Supreme Oil. Mr. Cole's testimony was not only relevant to the ultimate determination to be made by the Arbitrator, but it was, in fact, the counterpoint to the testimony that was received from the Fund's witness on this issue. Instead of hearing both sides of the issue in dispute, the Arbitrator heard only one side. By not allowing Mr. Cole to testify, the Arbitrator effectively prevented Supreme Oil from presenting its side of the dispute on this issue. In so doing, the Arbitrator tilted the playing field against Supreme Oil to so great an extent that the entire proceeding, as it pertained to this issue, was rendered fundamentally unfair. This denial of a fundamentally fair hearing is the very type of misconduct on the part of the Arbitrator that warrants vacating the Arbitrator's award. See Trans. Cas. Co. v. Trenwick Reinsurance Co., 659 F. Supp. 1346, 1354 (S.D.N.Y. 1987) aff'd mem., 841 F.2d 1117 (2nd Cir. 1988).

This Court is undeniably vested with the authority to vacate the Arbitrator's ruling where it results from a hearing that was fundamentally unfair, and this Court must exercise this authority and vacate the ruling being appealed herein.

### III. THE PLAN IS NOT ENTITLED TO ATTORNEYS' FEES IN CONNECTION WITH ITS DEFENSE OF THIS ACTION.

If Supreme Oil prevails on its Petition to vacate the Arbitrator's award, the Plan is not entitled to an award of attorneys' fees incurred by it in connection with its defense of this action. 29 U.S.C. § 1451(e) allows attorneys fees to be awarded only to the *prevailing* party.

### IV. THE COURT, IN GRANTING SUPREME OIL'S PETITION, MUST DENY THE FUND'S CROSS-MOTION TO CONFIRM THE ARBITRATION AWARD.

For the reasons set forth in Supreme Oils' Brief in Support of its Application to Vacate

-5-

the Arbitration Award, and for the reasons set forth herein, this Court must deny the Fund's Cross-Motion to confirm the Arbitration award. The language of the MOA that the Arbitrator was asked to apply was not even arguably ambiguous. The Arbitrator completely disregarded the clear and unequivocal language of the MOA and substituted in its place his own brand of justice in sharp contradiction of that language. Such an award cannot be permitted to stand and this Court possesses the authority to vacate it.

### V. THE PLAN IS NOT ENTITLED TO ATTORNEYS' FEES AND COSTS RELATIVE TO ITS APPLICATION TO CONFIRM THE FAULTY AWARD.

If the Arbitrator's award is not confirmed, the Plan is not entitled to an award of attorney's fees and costs incurred by it in obtaining same. ERISA 502(g)(2)(D), 29 U.S.C. § 1132(g)(2)(D) allows attorneys fees to be awarded only where *judgment in favor of a plan* is awarded.

STARR, GERN, DAVISON & RUBIN, P.C.
Attorneys for Petitioner, Supreme Oil Company, Inc.

By: _____
JONATHAN J. LERNER
JL/2916

Dated: February 29, 2008

## PROOF OF SERVICE

**JONATHAN J. LERNER**, of full age certifies as follows:

I am an attorney at law of the States of New York and New Jersey, a member in good standing of the Bar of this Court, and counsel for Supreme Oil Company, Inc. On the date below, the within Reply Brief on Behalf of Supreme Oil Company, Inc. was timely served electronically, in Adobe PDF format, and by First Class, United States Mail, postage prepaid, upon the following:

> Andrew John Calcagno, Esq.
> Calcagno & Associates
> Attorneys at Law, LLC
> Attorneys for the Funds
> 213 South Avenue East
> Cranford, New Jersey 07016

I declare under penalty of perjury that the foregoing is true and accurate to the best of my knowledge, information and belief.

_____
JONATHAN J. LERNER

Dated: February 29, 2008
       Roseland, New Jersey