UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
IN THE MATTER OF THE ARBITRATION :
BETWEEN :
 :
SUPREME OIL COMPANY, INC. :
 :
          Petitioner, :
 : 07 Civ. 6479 (RJH)
    - against - :
 : **MEMORANDUM OPINION**
RICHARD ABONDOLO, as Chairman of the : **AND ORDER**
Board of Trustees of UFCW LOCAL 174 :
COMMERCIAL HEALTH CARE FUND and :
RICHARD ABONDOLO, as Chairman of the :
Board of Trustees of UFCW LOCAL 174 :
COMMERCIAL PENSION FUND, :
 :
          Respondents. :
 :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
RICHARD ABONDOLO, as Chairman of the :
Board of Trustees of UFCW LOCAL 174 :
COMMERCIAL HEALTH CARE FUND and :
RICHARD ABONDOLO, as Chairman of the :
Board of Trustees of UFCW LOCAL 174 :
COMMERCIAL PENSION FUND, :
 :
          Petitioners, :
 : 07 Civ. 6537 (RJH)
    - against - :
 :
SUPREME OIL COMPANY, INC. :
 :
          Respondent. :
 :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

      Before the Court are cross-petitions concerning a June 13, 2007 arbitration award

in favor of UFCW Local 174 Commercial Health Care Fund and UFCW Local 174

Commercial Pension Fund (collectively the "Funds") and against Supreme Oil Company,

Inc. ("Supreme Oil"). Moving under the Employee Retirement Income Security Act, 29 U.S.C. § 1132(a) ("ERISA"), and the Labor-Management Relations Act, 29 U.S.C. § 185(a) ("LMRA"), the Funds seek confirmation of the award and attorney's fees, while Supreme Oil seeks vacatur. For the reasons that follow, the Court confirms the award, denies the petition to vacate, and awards the Funds attorney's fees.

## BACKGROUND

Supreme Oil and Local 174 of the United Food & Commercial Workers, AFL-CIO ("Local 174") entered into a collective bargaining agreement ("CBA"), on October 1, 2000. The CBA was renewed with minor modifications by memoranda of agreement ("MOA") in 2003 and 2006. Together, the CBA and MOA require Supreme Oil to make monthly contributions to the Funds to provide health and pension benefits for Supreme Oil's employees. The CBA mandated that the parties resolve any disputes through arbitration. The parties disagreed over the appropriate increase in monthly contributions specified in the 2003 MOA and submitted the dispute to arbitration. The arbitrator decided in favor of the Funds, and the present cross-petitions followed.

The 2003 MOA set out a schedule for annual increases ("step-ups") in the monthly contributions to the health care fund as follows:

    Family Plan
    Effective October 1, 2003        $458.00 per month
    Effective October 1, 2004        $508.00 per month*
    Effective October 1, 2005        $558.00 per month*

    *Rates may be increased by up to $25.00 per month in accordance with a call-up
    to all contributing Employers.

    Single Coverage
    Effective October 1, 2003        $271.00 per month

    Effective October 1, 2004    $295.00 per month*
    Effective October 1, 2005    $334.00 per month*

    *Rates may be increased by up to $25.00 per month in accordance with a call-up to all contributing Employers

(Local 174 Br. in Opp'n to Mot. to Vacate ("Local 174 Br."), Ex. B. at 1–2.)

Call-ups were made in 2004 and 2005. ((*Id.*, Ex. A, Arbitrator's Opinion and Award ("Ex. A") at 16–17.)

  The chief dispute submitted to arbitration was the effect of a call-up during the second year on the contribution amount during the third year. The Funds contended that the agreed-upon step-ups required Supreme Oil to increase contributions by a specific sum each year. On the Funds' interpretation, a call-up during the second year effectively carried over into the third year. For example under the family plan, if a call-up occurred during the second year the contribution amount for the third year would start at $583.00 ($558.00 + $25.00), subject to the possibility of an additional $25.00 call-up during the third year. (Ex. A at 5–6.) Supreme Oil contended that each step-up increased contributions to a specified amount, and hence that a call-up during the second year did not carry over to the third year. (*Id.* at 10–11.) At the arbitration hearing, the Funds presented evidence and testimony regarding the interpretation of the CBA by board members and staff of the Funds, including some involved in the renewal of the CBA. Supreme Oil sought to introduce testimony by the attorney representing them in the arbitration, but the arbitrator refused to admit his testimony. (*Id.* at 3–12.)

  On June 13, 2007, the arbitrator issued a decision for the Funds on all issues submitted for arbitration,[1] adopting the Funds' proffered interpretation of the CBA, and

---

[1] The following four issues were submitted to arbitration:

3

awarding $294,665 in contributions due under the CBA, liquidated damages of 20% of the contributions outstanding, interest at the New York State statutory rate of 9%, and attorney fees in the amount of $19,425, (Ex. A at 19-20) for a total award of $ 399, 542.85.  (Local 174 Br., Ex. G. at 1.)

## DISCUSSION

**I.    Legal Standards**

Court review of an arbitration award is extremely deferential under both §301 of the LMRA, 29 U.S.C. §185, and § 9 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §9.[2]  Under the LMRA, an arbitration award should be upheld as long as it "draws its essence from the collective bargaining agreement." *United Steelworkers of America v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960).  Even if the Court is convinced that the"[the arbitrator] committed serious error," the award should not be vacated so long as the arbitrator is "even arguably construing or applying the contract and acting within the scope of his authority." *United Paperworkers Int'l v. Misco*, 484 U.S. 29, 38–39 (1987).

---

  (1) Is the Fund billing, timely and with proper documentation for employer change of coverage from the single coverage to the family coverage (Fund 6 a-f)?  If not, what shall the remedy be?
  (2) Is the Employer obligated to pay the $25.00 call in addition to the $50.00 contribution increase in the second and third years of the contract, as set forth in the Memorandum of Agreement (MOA) (J-3 as marked in evidence)?  If so, what shall the remedy be?
  (3) Is the employer obligated to pay the alleged outstanding contribution to the UFCW Local 174 Commercial Pension Fund?  If so, what shall the remedy be?
  (4) Is the Employer liable for Liquidated Damages, Interest, and Attorney's Fees for its alleged failure to pay timely contributions to the Funds?  If so, what shall the remedy be?
(Ex. A. at 2.)

[2]  Although the LMRA, rather than the FAA, governs actions like this one involving "contracts of employment of . . . workers engaged in foreign or interstate commerce," *see* 9 U. S. C. § 1; 29 U.S.C. § 185, federal courts look to the FAA to guide the development of rules of federal common law to govern such disputes  pursuant to the authority to develop such rules granted under 29 U.S.C. §185.  *United Paperworkers Int'l v. Misco*, 484 U.S. 29, 40 n.9 (1987); *see Teamsters Local 814 Welfare Fund v. Dahill Moving & Storage Co.,* No. CV-07-2005 (CPS), 2007 U.S. Dist. LEXIS 39116 at *2 (E.D.N.Y. May 30, 2007) (confirming an arbitration award under the LMRA and explicitly looking to the procedure for confirming an arbitration award under the FAA).

4

Vacatur is appropriate only when arbitral decisions "simply reflect the arbitrator's own notions of industrial justice" rather than an interpretation of the contract or agreement at issue. *Id.* at 36, 38. Indeed, "it is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." *United Steelworkers*, 363 U.S. at 599. Further, "the federal policy in favor of enforcing arbitration awards is particularly strong with respect to arbitration of labor disputes." *New York Hotel & Motel Trades Council, AFL-CIO v. Hotel St. George*, 988 F. Supp. 770, 774 (S.D.N.Y. 1997) (citing *United Paperworkers*, 484 U.S. at 37).

The FAA only permits a court to vacate or modify an arbitral award in a limited set of circumstances, 9 U.S.C. § 10–11, and obligates district courts to confirm arbitration awards on proper motion unless vacated or modified. *Id.* § 9. Further, in the Second Circuit, "a motion to vacate . . . is not an occasion for *de novo* review of an arbitral award." *Wallace*, 378 F.3d at 189. However, an arbitration award should be vacated, *inter alia*, "where the arbitrators were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy." 9 U.S.C. § 10(a)(3). This provision, relied on by Supreme Oil in the instant case, applies only in the "very rare instances when an arbitrator's procedural aberrations rise to the level of affirmative misconduct." *United Paperworkers*, 484 U.S. at 40–41, n.10.

Until recently, courts in this circuit had held that arbitration awards under the LMRA and FAA may also be challenged on the judicially-created ground of "manifest disregard of the law." *Greenberg v. Bear, Stearns & Co.*, 220 F.3d 22, 27–28 (2d Cir. 2000); *IBEW Local 97 v. Niagra Mohawk Power Corp.*, 143 F.3d 704, 715 (2d Cir.

5

1998).  However, the Supreme Court recently held that the FAA sets out the exclusive statutory grounds for vacating a commercial arbitration award.  *Hall Street Assocs. v. Mattel,* 128 S.Ct. 1396, 1403 (2008).  This Court has construed *Hall Street Associates* as inconsistent with the treatment of manifest disregard of the law as an independent basis for vacatur under the FAA.  *See Robert Lewis Rosen Assocs. v. Webb*, No. 07 Civ. 11403 (RJH), 2008 U.S. Dist. LEXIS 51446, at *10–*12 (S.D.N.Y. July 7, 2008).  While *Hall Street*'s effect (if any) on review of arbitration awards under the LMRA is unclear; the Court need not reach that question as Plaintiff does not claim, and the Court does not find any manifest disregard of the law.  *See infra* note 3.

In the Second Circuit "manifest disregard of the *evidence* [is not a] proper ground for vacating an arbitrator's award."  *Wallace v. Buttar*, 378 F.3d 182, 193 (2d Cir. 2004) (citation omitted) (emphasis added); *see also Tucker v. American Bldg. Maint.*, 451 F. Supp. 2d 591, 596–97 (S.D.N.Y. 2006) (holding courts are precluded from reviews of the factual record except to determine if there is manifest disregard of the law).  "[W]hatever the weight of the evidence considered as a whole, '[i]f ground for the arbitrator's decision can be inferred from the facts of the case, the award should be confirmed.'"  *Wallace*, 378 F.3d at 193 (quoting *Fahnestock & Co., Inc. v. Waltman*, 935 F.2d 512, 516 (2d Cir. 1991)).

## II.    Application

Supreme Oil asserts two grounds for vacating the arbitration award: first, that the interpretation of the CBA reached by the arbitrator disregarded the "clear and

6

unequivocal language" of the parties' agreement, and second, that the arbitrator's decision to exclude testimony by its counsel made the hearing "fundamentally unfair."[3]

### A. The Arbitrator's Interpretation of the Agreement

Supreme Oil asserts that the "clear and unequivocal language" of the MOA permits only one interpretation, and that the arbitrator ignored the MOA's plain meaning. (Pet'r Supreme Oil Mot. to Vacate at 1–2.) The Court finds Supreme Oil's argument unpersuasive. The arbitrator was presented with a wealth of evidence, including the text of the MOA, the minutes of the Board of Trustees of the funds and testimony by representatives of the union and the Vice President of Finance of Supreme Oil. (Ex. A. at 6–7, 17.) The arbitrator found that this evidence, combined with a negative inference made from Supreme Oil's failure to present any evidence in rebuttal,[4] supported the conclusion that the MOA provided for $25 call-ups that carried over from year to year in addition to an annual step-up of a specified amount, (*Id.* at 5–8, 10, 13, 16.)

While Supreme Oil may disagree with the arbitrator's interpretation of the CBA and his decision, it has failed to demonstrate that the arbitrator's interpretation did not draw its essence from the collective bargaining agreement. *See United Paperworkers,* 484 U.S. at 38-39. In the Court's view, both sides presented the arbitrator with plausible

---

[3] Supreme Oil has identified no statute or case law that was disregarded by the arbitrator. Manifest disregard of the law is "severely limited" in the Second Circuit; the standard "gives extreme deference to arbitrators." *Greenberg*, 220 F.3d at 28; *see also IBEW Local 97*, 143 F.3d at 715 (distinguishing manifest disregard of controlling law from contractual interpretation). Having reviewed the arbitration award, the Court finds no manifest disregard of the law, without addressing whether manifest disregard survives as a ground for vacatur under the LMRA.

[4] The arbitrator took care to identify potential witnesses when making this inference, including Vincent DeVito, president of Local 1245, John Trocolli, Secretary/Treasurer of Local 1245 (who was party to the negotiation of the MOA and later voted with the board of trustees on two occasions to make a $25 call in addition to the expected $50 annual step-up), and Michael Lefler, a principal of Supreme Oil, as individuals who might have probative evidence, and would, if called, be able to testify. (*Id.* at 6–7.)

7

interpretations of the agreement. That the arbitrator adopted the Funds' preferred interpretation over Supreme Oil's is simply not a ground for vacatur. *See Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 214 (2d Cir. 2002) ("Interpretation of these contract terms is within the province of the arbitrator and will not be overruled simply because we disagree with that interpretation.") (internal quotations omitted); *Andros Compania Maritima, S.A. v. Marc Rich & Co., A.G.*, 579 F.2d 691, 703 (2d Cir. 1978) (expressing disfavor for arguments to vacate that are little more than "invitations to second-guess an arbitrator's resolution of a contract dispute").

### B. Evidentiary Rulings During Arbitration

During the arbitration hearing, Supreme Oil sought to introduce the testimony of its counsel for the arbitration hearing, Larry Cole, who had taken part in the negotiation of the MOA. The arbitrator declined to allow Mr. Cole to testify, but granted Supreme Oil's request to submit an offer of proof. (Ex. A at 12.) Supreme Oil contends that this decision made the proceeding fundamentally unfair. The Court, however, disagrees.

Arbitrators possess great latitude to determine the procedures governing their proceedings and to restrict or control evidentiary submissions, without the need to follow "all the niceties observed by the federal courts." *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 20 (2d Cir. 1997). Review is limited to whether the process retained "fundamental fairness." *Id.* (internal citations omitted). Misconduct that amounts to a denial of fundamental fairness denies a party "sufficient opportunity to present proof of a claim or defense . . . and renders the resulting arbitral decision biased, irrational or arbitrary." *Fairchild Corp. v. Alcoa, Inc.*, 510 F. Supp. 2d 280, 287 (S.D.N.Y. 2007).

Supreme Oil fails to show that the arbitrator's evidentiary ruling made the process "fundamentally unfair." Supreme Oil itself states that Mr. Cole was the "lead negotiator" on the CBA, (Supreme Oil Rep. Br. at 5), suggesting that there were other negotiators that could offer similar relevant testimony.[5] Further, the arbitrator was offered the testimony of James Smith, Vice President of Finance of Supreme Oil,[6] who testified that he was aware of the "contractual increases of $50.00 in each year of the contract," (Ex. A at 17) suggesting that insofar as other testimony was available, it did not support Supreme Oil's position.

Moreover, there are valid reasons to prevent an advocate from testifying absent a showing of substantial hardship to the client. Under the New York Lawyer's Code of Professional Responsibility, an attorney may be sanctioned for simultaneously acting as advocate before a "tribunal"[7] and acting as a witness regarding a "significant issue" unless the testimony regards an undisputed issue, a matter of formality, the nature and value of legal services, or if the disqualification "would work a substantial hardship on the client because of the distinctive value of the lawyer as counsel in the particular case." N.Y.S. Bar Assoc. Code of Prof'l Responsibility, 22 NYCRR § 1200.21 (2008) (Disciplinary Rule 5-102). This rule requires that attorneys decline representation if they anticipate, or withdraw from representation if they face a situation where they *must* offer testimony that does not fit one of the above exceptions. *Id.* Federal courts disfavor, but do not categorically exclude the testimony of an advocate, and many courts have

---

[5] And several possible alternative witnesses were identified by the arbitrator. *See* note 4, *supra.*

[6] Called by the attorney for the Funds. (Ex. A at 17.)

[7] The Code defines "tribunal" to include "all courts, *arbitrators* and all other adjudicatory bodies." 22 NYCRR § 1200.1 (2008) (emphasis added).

9

excluded the testimony of advocates or required an advocate to withdraw as counsel to be introduced as a witness absent a demonstration of need.  *See* Jack B. Weinstein & Margaret A. Berger, 3 Weinstein's Federal Evidence, § 601.04[3] (June 2007).

The Funds rightly note that Supreme Oil had ample opportunity to find another attorney or another witness *before* the hearing at issue, and that the arbitrator makes explicit reference to Supreme Oil's failure to subpoena or call a number of identified individuals who could have presented similar evidence to attempt to rebut Local 174's submissions regarding the interpretation of the MOA.  (Local 174 Br. at 6; Ex. A at 7.)  Thus, whatever prejudice Supreme Oil suffered from its inability to present Mr. Cole's testimony was due to its strategic choice to retain Mr. Cole as its counsel at the arbitration hearing and not to call some other competent witness.  Therefore, the Court finds that the arbitrator's decision not to allow Mr. Cole to testify did not render the proceeding fundamentally unfair.

### III.   Fees and Costs

Under ERISA the prevailing party in an action to recover unpaid contributions to a benefit fund is entitled to an award of reasonable attorney's fees and costs.  29 U.S.C. § 1132(g)(2)(D).  An action to confirm an arbitrator's award of such payments is considered to be an action to recover unpaid contributions.  *E.g.*, *Trs. of the Amalgamated Ins. Fund v. S & S Tailoring*, No. 01 Civ. 9474 (DLC), 2002 U.S. Dist. LEXIS 364 (S.D.N.Y. Jan 14, 2002), *2–*3 (holding action to confirm arbitration award entitled plaintiff to interest under § 1132(g)(2)); *see also Trs. of Amalgamated Ins. Fund v. Geltman Industries, Inc.*, 784 F.2d 926, 931–32 (9th Cir. 1986) (holding action to

confirm arbitration award entitled prevailing plaintiff fund to attorney fees). Supreme Oil's opposition to an award of fees is limited to its argument that the Court should deny the Funds' petition to confirm the award. (Supreme Oil Rep. Br. at 5–6.) Supreme Oil makes no argument to dispute that 29 U.S.C. §§ 1132 allows a prevailing party to receive attorney's fees or costs, or that the Funds' claim of fees is reasonable. (*Id.* at 5–6.)

The Funds were awarded a total of $399,542.85 by the arbitrator on June 13, 2007, which the Court now confirms. The Funds are therefore the "prevailing party" for the purposes of an award of fees. *Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603 (2001) (defining "prevailing party" as one "awarded some relief" by the court) (citations omitted). The Funds move the Court to award $20,715.41 in attorney's fees and costs, and arbitrator's fees of $4,000. As there is no dispute that, having prevailed, the Funds are entitled to an award of fees, the only issue is the reasonableness of the requested amount. *See Iron Workers Dist. Council v. Hudson Steel Fabricators & Erectors*, 68 F.3d 1502, 1507 (2d Cir. 1995) (holding "judgment in favor of a plan" in an ERISA action entitles plaintiff to interest, attorney's fees and costs).

In the Second Circuit, fee awards are determined by the "presumptively reasonable fee" method. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183–84 (2d Cir. 2008). This test takes into account a range of case-specific variables to determine what a paying client would spend on litigating the case by determining a reasonable hourly rate. *Id.* at 184. The presumptively reasonable fee is then determined from the reasonable hourly rate and the

11

time records provided by counsel. *Id.* at 189–90. The hourly rate and number of hours should be "what a reasonable, paying client would be willing to pay" under the circumstances. *Id.* at 184.

In the instant action, Local 174 presents bills for 54.10 hours of the time of Andrew John Calcgano, Esq., charging $375/hour, and costs in the amount of $427.91. A consideration of the relevant factors, combined with a review of similar fee awards, leads the Court to conclude that the rate and number of hours charged are reasonable for the type of case and size of recovery at issue in the Southern District of New York. *See Arbor Hill*, 522 F.3d at 186–87 n.3, 189–90 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 716–717 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989) (holding that courts in the Second Circuit should consider factors including but not limited to those set out in *Johnson* to determine the rate a paying client would find reasonable); *See, e.g., McDonald v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91, 98 (2d Cir. 2006) (holding rate of $325/hour for experienced ERISA attorney in 2002 reasonable, and $390/hour "not necessarily incorrect," while overturning award at that rate for other reasons); *Teamsters Local 814 Welfare Fund v. Dahill Moving & Storage Co.*, 545 F. Supp. 2d 260, 262–63, 265–67 (E.D.N.Y. 2008) (determining fees according to the rates for counsel practicing in the Southern District). Although the questions presented are not novel, there is a significant amount at issue in the case, and counsel has demonstrated his ability by reaching a favorable result.

"[A]ny attorney . . . who applies for court-ordered compensation . . . must document the application with contemporaneous time records." *New York State Ass'n for*

*Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). These records should specify, for each attorney, the date, the hours expended and the nature of the work. *Id.* Counsel has submitted contemporaneous time records in support of the motion for fees with the required degree of specificity, and having carefully reviewed each entry, the Court concludes that they are reasonable, and awards the Funds attorney's fees and costs in full. (Supreme Oil Br. in Opp'n to Mot. to Vacate, Ex. F.) The Court may also award any other legal or equitable relief as it deems appropriate. 29 U.S.C. § 1132(g)(2)(E). The Court concludes that an award of the arbitrator's fee is appropriate, and orders that Supreme Oil must pay the arbitrator whatever remains due and remit any portion of the arbitrator's fee that has already been paid by the Funds, up to the full fee of $4,000.

## CONCLUSION

The standard that an arbitration award must meet to be confirmed is a low one. In the instant matter, the arbitrator allowed the parties an opportunity to address the issues, heard their arguments and "explain[ed] [his] conclusions in terms that offer [more than] a barely colorable justification for the outcome reached." *Commercial Risk Reinsurance Co. v. Sec. Ins. Co.*, 526 F. Supp. 2d 424, 429 (S.D.N.Y. 2007) (quoting *Marc Rich & Co, A.G,* 579 F.2d at 704). The Court grants the Funds' cross-motion to confirm the award **[15]** and denies Supreme Oil's petition to vacate. **[1]** Fees are awarded as detailed above, and the parties are ordered to submit a proposed form of judgment to the Court within 30 days.

SO ORDERED.

Dated: New York, New York
       July 31, 2008

                                                             _____
                                                              Richard J. Holwell
                                                              United States District Judge

14